IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

OYZHANA WILLIAMS,

    Plaintiff,

v.

MICHAEL HAWKINS, Aurora Police Sergeant, in his individual capacity;
JORDAN ODNEAL, Aurora Police Officer, in his individual capacity;
JOSE ORTIZ, Aurora Police Officer, in his individual capacity,

    Defendants.

## COMPLAINT AND JURY DEMAND

OyZhana Williams, through her attorneys Adam Frank and Faisal Salahuddin of FRANK & SALAHUDDIN LLC, respectfully alleges as follows:

### INTRODUCTION

1. This is a civil rights action for monetary damages, declaratory relief, injunctive relief, and relief in the nature of mandamus, brought pursuant to 42 U.S.C. § 1983.

2. On December 22, 2015, Sgt. Mike Hawkins and Ofc. Jordan Odneal of the Aurora Police Department assaulted OyZhana Williams without any justification. Sgt. Hawkins, grabbed Ms. Williams, threw her, choked her, and used his leg as a tripwire against her. Ofc. Odneal then tackled Ms. Williams over Sgt. Hawkins' leg, slamming her head into the ground. Once Ms. Williams was on the ground, Sgt. Hawkins stomped on Ms. Williams' head. Then, to cover up Sgt. Hawkins' and Ofc. Odneal's misconduct, they arrested Ms. Williams and falsely charged her with assaulting Sgt. Hawkins. Ofc. Ortiz witnessed the assault on Ms. Williams. Even though he personally watched Sgt.

Hawkins and Ofc. Odneal assault Ms. Williams, he wrote and swore to the truth of a false affidavit in which he claimed that he witnessed Ms. Williams assault the officers. Based on Ofc. Ortiz's false affidavit claiming there was probable cause to arrest Ms. Williams, she was held in jail for a week, including over Christmas. The entire assault was captured on video. Faced with irrefutable video evidence, the prosecutor in Ms. Williams's case dismissed all charges against her. But for the surveillance video that captured Sgt. Hawkins' and Ofc. Odneal's assault on Ms. Williams, they likely would have succeeded in sending Ms. Williams to prison based on their false accusations and ruining her life. Because of the surveillance video, they are now being called to account for their illegal and unconstitutional actions.

3. This action arises under the Constitution and laws of the United States and is brought pursuant to 42 U.S.C. § 1983. This Court possesses subject-matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331, 1343, and 2201-02. Plaintiff seeks relief in the nature of mandamus, 28 U.S.C. § 1361. Jurisdiction supporting Plaintiff's claim for attorneys' fees and costs is conferred by 42 U.S.C. § 1988.

4. Plaintiff seeks declaratory relief, injunctive relief, relief in the nature of mandamus, and damages as set forth herein. 28 U.S.C. §§ 2201-02; 28 U.S.C. § 1361; Fed. R. Civ. P. 65. This Court further has the authority to award attorneys' fees pursuant to 42 U.S.C. § 1988(b).

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391. All the events alleged herein occurred in the State of Colorado, and all of the parties were residents of and/or domiciled in the State at the time of the events giving rise to this litigation.

**PARTIES**

6. Plaintiff OyZhana Williams is a 23-year old African-American woman. She is a resident of Colorado and was a resident of Colorado at all times relevant to this complaint. See Exhibit 1.

7. Defendant Michael Hawkins is an Aurora Police Department Sergeant. He assaulted OyZhana Williams on December 22, 2015. At all times relevant to this litigation, he was acting under color of state law.

8. Defendant Jordan Odneal is an Aurora Police Department Officer. He assaulted OyZhana Williams on December 22, 2015. At all times relevant to this litigation, he was acting under color of state law.

9. Defendant Jose Ortiz is an Aurora Police Department Officer. He wrote and swore to a false affidavit to support the wrongful arrest and prosecution of OyZhana Williams on December 22, 2015. At all times relevant to this litigation, he was acting under color of state law.

## FACTUAL ALLEGATIONS

10. On the early morning of December 22, 2015, OyZhana Williams's boyfriend, Blake Newton, was shot.

11. When Ms. Williams learned her boyfriend had been shot, she was terrified.

12. Ms. Williams immediately took Mr. Newton to the UC Health emergency room at 15300 E. Mississippi Avenue in Aurora, Colorado.

13. Sgt. Hawkins, Ofc. Odneal, and Ofc. Ortiz arrived shortly afterwards to investigate Mr. Newton's shooting.

14. Sgt. Hawkins spoke with Ms. Williams. During this conversation, Ms. Williams was calm and cooperative. However, Sgt. Hawkins became increasingly agitated throughout the conversation.

15. After speaking with Ms. Williams for approximately five minutes, Sgt. Hawkins informed Ms. Williams that he needed to tow the car that was used to drive Mr. Newton to the hospital so it could be searched and examined.

16. Ms. Williams and Sgt. Hawkins then walked out to the car to examine it together.

17. The car was unlocked when Sgt. Hawkins reached it.

18. Ms. Williams walked a short distance away from the car to allow Sgt. Hawkins to search it without interference.

19. Sgt. Hawkins briefly searched the car.

20. After completing the search, Sgt. Hawkins spoke with Ms. Williams.

21. At approximately 3:50 am, Ms. Williams and Sgt. Hawkins walked back inside the emergency room lobby.

22. A few minutes later, Ms. Williams walked back out of the lobby, accompanying Mr. Newton's gurney on its way to the ambulance.

23. Mr. Newton was transported by ambulance to the main UC Health hospital for treatment for his gunshot wound.

24. After Mr. Newton was loaded into the ambulance, Ms. Williams and Sgt. Hawkins had a verbal disagreement.

25. Sgt. Hawkins went to go sit in his police car.

26. Ms. Williams then spoke calmly with the other officers for few minutes.

27. At approximately 3:52 am, Ms. Williams reentered the emergency room lobby.

28. Approximately eleven minutes later, Ms. Williams and Sgt. Hawkins walked back outside.

29. Sgt. Hawkins has Ms. Williams stand in the open doorway of the rear driver's side door of his police car.

30. Ofc. Odneal, who had been sitting in the driver's seat, exited the police car and stood next to his car between the car and the open front driver's side door.

31. Sgt. Hawkins then started demanding that Ms. Williams give him the keys to the car.

32. Sgt. Hawkins had no legal right to seize the keys from Ms. Williams.

33. As a trained police officer, Sgt. Hawkins knew he had no legal right to take the keys.

34. Sgt. Hawkins disregarded the illegality of his demand and continued to order Ms. Williams to give him the car keys.

35. Sgt. Hawkins was aggressive during this conversation, pointing his finger in Ms. Williams' face.

36. Under duress from Sgt. Hawkins' threats, Ms. Williams held out the keys and dropped them for Sgt. Hawkins to catch.

37. Sgt. Hawkins made no attempt to catch the keys. He let them hit the ground.

38. At this point, Sgt. Hawkins had no legal basis to arrest Ms. Williams or to use even the slightest degree of force against her. Ms. Williams had broken no law and presented no threat.

39. Sgt. Hawkins disregarded these facts and reached out to grab Ms. Williams.

40. When this was unsuccessful, he swiped at her.

41. Ms. Williams retreated into the back seat of the Aurora Police Department police car.

42. Sgt. Hawkins did not close the door to the police car, which would have eliminated any threat he thought she hypothetically might pose.

43. Instead, Sgt. Hawkins reached into the back seat of the police car, grabbed Ms. Williams, and threw her out of the car.

44. Sgt. Hawkins put his forearm on Ms. Williams' throat and forced her to bend backwards over the trunk of the car while he choked her with his forearm.

45. Ms. Williams did not immediately fall to the ground because she was bent backwards over the trunk of the car.

46. Sgt. Hawkins continued to try to throw Ms. Williams on the ground by her neck.

47. Sgt. Hawkins then put his leg out behind Ms. Williams' legs.

48. Ofc. Odneal tackled Ms. Williams over Sgt. Hawkins extended leg.

49. Ofc. Odneal's tackle drove Ms. Williams head into the pavement.

50. Ofc. Ortiz and another officer ran up and joined Ofc. Odneal.

51. Together, Ofc. Odneal, Ofc. Ortiz, Sgt. Hawkins and the other officer handcuffed Ms. Williams.

52. When Ofc. Odneal and the other officer ran up, Sgt. Hawkins released his grip on Ms. Williams.

53. Sgt. Hawkins did not walk away from the struggle after he had released his grip on Ms. Williams.

54. Instead, Sgt. Hawkins walked to where Ms. Williams' head was pinned to the ground, lifted his left leg, and stomped on Ms. Williams head while she was laying on the pavement.

55. After this, Sgt. Hawkins walked over, picked up Ms. Williams' keys from the ground, and went back to Ms. Williams to assist the other three officers pinning her the pavement.

56. The entirety of Sgt. Hawkins' and Ofc. Odneal's assault on Ms. Williams was captured by the emergency room's surveillance cameras.[1]

57. None of the involved officers were wearing body cameras.

58. In the course of assaulting Ms. Williams, Sgt. Hawkins ended up with a small scratch on his forehead.

59. Ofc. Ortiz used this scratch to form the basis for false charges he filed against Ms. Williams.

60. Ofc. Ortiz wrote a probable cause affidavit to support the arrest, charging, and prosecution of Ms. Williams.

61. Ofc. Ortiz signed this probable cause affidavit, swearing to the truth of its contents.

62. However, the contents of Ofc. Ortiz's probable cause affidavit were false and/or deliberately misleading.

---

[1] For the Court's reference, video of the assault is available here: https://www.dropbox.com/sh/188nqvtkhe41mk2/AAAGA2HcSxvi5hm8PDw959Qwa?dl=0.

63. In his affidavit, Ofc. Ortiz swore that after "Sergeant Hawkins grabbed Williams by her left wrist and began to place her under arrest for obstructing the investigation[,] Williams swung her right hand across Sergeant Hawkin's [sic] forehead. Her fingernails cut into his forehead and caused him to start bleeding."

64. Ofc. Ortiz's statement was false and/or deliberately misleading. As the video of the assault shows, this isn't an accurate description of what happened.

65. Sgt. Hawkins also wrote a report regarding the incident with Ms. Williams. His report contains numerous false and/or deliberately misleading statements.

66. For example, Sgt. Hawkins described the beginning of his assault on Ms. Williams as follows: "I grabbed her left wrist for handcuffing as she tried to back into the police car. She scratched me with the fingernails of her right hand across my forehead." As the video of the assault shows, this isn't an accurate description of what happened.

67. Ofc. Odneal also wrote a report regarding the incident with Ms. Williams. His report contains numerous false and/or deliberately misleading statements.

68. For example, Ofc. Odneal described the beginning of Sgt. Hawkins' assault on Ms. Williams as follows: "I observed the female swing her arms in an attempt to not only pull away from Sgt. Hawkins' grip but also what appeared to be an attempt to strike Sgt. Hawkins." As the video of the assault shows, this isn't an accurate description of what happened.

69. Sgt. Hawkins, Oft. Odneal, and Ofc. Ortiz arrested Ms. Williams on December, 22, 2015.

70. Ms. Williams was initially held on a $50,000 bond.

71. Ms. Williams remained in custody until December 28, 2015, when a judge heard argument from her counsel and lowered her bond to an amount she could post.

72. Ms. Williams was held in jail on Christmas and Christmas Eve.

73. Based on the reports of Sgt. Hawkins, Ofc. Odneal, and Ofc. Ortiz, Ms. Williams was prosecuted for second degree assault on a police officer.

74. Had Ms. Williams gone to trial and lost on this charge, she would have faced a mandatory prison sentence of four to twelve years.

75. On November 4, 2016, ten-and-a-half months after the Defendants assaulted her, the prosecutor dismissed all charges against Ms. Williams.

76. Sgt. Hawkins' and Ofc. Odneal's assault on Ms. Williams left her in serious pain and with lasting injury.

77. Based on the assault, Ms. Williams had significant bruising on her face. She had a headache for a week. She had ringing in one of her ears for multiple weeks. For months after the assault, she suffered migraines.

78. Ms. Williams also spent ten-and-a-half months under the threat of going to prison based on false charges. The false charges and potential for imprisonment caused her great emotional distress.

79. The false charges also caused Ms. Williams to lose a job and be unable to secure a new one until they were dismissed.

## CLAIMS FOR RELIEF

### First Cause of Action: Excessive Force
### Fourth Amendment; 42 U.S.C. § 1983
### Defendants Hawkins, Odneal

80. Ms. Williams incorporates all other paragraphs as if fully detailed herein.

81. Defendants Hawkins and Odneal subjected Ms. Williams to force which, judged from the perspective of a reasonable officer on the scene, was unreasonable.

82. Given that Ms. Williams had committed no crime, posed no threat to any officer, and had engaged in no physical resistance, Officers Hawkins and Odneal were not justified in using any force

against Ms. Williams, and certainly were not justified in using the extreme force they used, including slamming Ms. Williams' head into the ground and then stomping on it.

83. Defendants' actions caused Ms. Williams substantial harm.

### Second Cause of Action: Unlawful Seizure – Car Keys
### Fourth Amendment; 42 U.S.C. § 1983
### Defendant Hawkins

84. Ms. Williams incorporates all other paragraphs as if fully detailed herein.

85. Defendant Hawkins illegally seized Ms. Williams' car keys from her, setting in motion the chain of events that led to his and Defendant Odneal's assault of Ms. Williams.

86. It was immediately apparent to Defendant Hawkins that – while the car itself might have value as evidence in his investigation into the shooting of Mr. Newton – the car keys did not.

87. To the contrary, it was immediately apparent to Defendant Hawkins that the car keys had no evidentiary value to his investigation.

88. Based on these facts, Defendant Hawkins had no legal right to seize the car keys, and he knew it. When he seized the car keys anyway, he violated Ms. Williams' constitutional rights.

89. Defendant Hawkins' actions were the proximate cause of the assault Ms. Williams suffered at his and Defendant Odneal's hands. Defendant Hawkins therefore caused Ms. Williams substantial harm through his illegal seizure of the car keys.

### Third Cause of Action: Unlawful Arrest and Unlawful Detention
### Fourth Amendment; 42 U.S.C. § 1983
### Defendants Hawkins, Odneal, Ortiz

90. Ms. Williams incorporates all other paragraphs as if fully detailed herein.

91. Defendants Hawkins, Odneal, and Ortiz caused the arrest and continued detention of Ms. Williams without probable cause to support her arrest or detention.

92. Defendants' wrongful arrest of Ms. Williams was the proximate cause of the injuries she suffered in the course of the Defendants' efforts to arrest her.

93. Ms. Williams remained in custody for a week, including over Christmas, based on this wrongful detention. This caused Ms. Williams substantial harm.

### Fourth Cause of Action: Malicious Prosecution
### Fourth Amendment; 42 U.S.C. § 1983
### Defendants Hawkins, Odneal, Ortiz

94. Ms. Williams incorporates all other paragraphs as if fully detailed herein.

95. Defendants Hawkins, Odneal, and Ortiz caused Ms. Williams' confinement and prosecution.

96. The prosecution of Ms. Williams terminated in her favor with a dismissal of all charges against her.

97. There was no probable cause to support Ms. Williams' original arrest.

98. Defendants Hawkins, Odneal, and Ortiz acted maliciously in securing the prosecution of Ms. Williams. Defendants sought to have Ms. Williams prosecuted and convicted because they knew such a conviction would prevent her from bringing a civil rights lawsuit against them for their violations of her civil rights.

99. With this knowledge, they intentionally and maliciously advanced a prosecution of Ms. Williams that they knew was unwarranted.

100. Based on Defendants' actions, Ms. Williams suffered significant harm, including but not limited to her wrongful incarceration.

### PRAYER FOR RELIEF

WHEREFORE, Ms. Williams respectfully requests that this Court enter judgment in her favor against Defendants, and award her all relief as allowed by law, including but not limited to the following:

a) Appropriate relief at law and equity;

b) Declaratory relief, injunctive relief, and other appropriate equitable relief;

c) Compensatory and punitive damages on all claims allowed by law in an amount to be determined at trial;

d) Relief in the nature of mandamus;

e) Attorneys' fees and the costs associated with this action on all claims pursuant to 42 U.S.C. § 1988 and all applicable law;

f) Pre- and post-judgment interest at the appropriate lawful rate;

g) Any further relief that this Court deems just and proper, and any other relief as allowed by law.

**PLAINTIFF HEREBY DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Dated: September 5, 2017

*s/ Adam Frank*
Adam Frank
Faisal Salahuddin
FRANK & SALAHUDDIN LLC
1741 High Street
Denver, CO 80218
Telephone: (303) 974-1084
Fax: (303) 974-1085
fas@fas-law.com
adam@fas-law.com
*Attorneys for Plaintiffs*