**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

*Civil Action No. 17-cv-02123-REB-KMT*

OYZHANA WILLIAMS,

    Plaintiff,

v.

MICHAEL HAWKINS, Aurora Police Sergeant, in his individual capacity;
JORDAN ODNEAL, Aurora Police Officer, in his individual capacity; and
JOSE ORTIZ, Aurora Police Officer, in his individual capacity;

    Defendants.

---

**NON-PARTY CITY OF AURORA'S
MOTION TO QUASH SUPBPONA TO PRODUCE**

---

COMES NOW, the City of Aurora, Colorado (the "City"), by and through its undersigned counsel, and pursuant to Fed. R. Civ. P. 45(d)(3)(A)(iii) and (iv), hereby submits its Motion to Quash Plaintiff's Subpoena to Produce ("Motion to Quash"), and states as follows:

**D.C.COLO.LCivR 7.1(a) CONFERRAL**

Undersigned counsel conferred with Plaintiff's counsel regarding the subject matter of this Motion. Plaintiff opposes this Motion.

**MOTION**

In a subpoena issued to the City of Aurora, a nonparty in this case, Plaintiff seeks information that is confidential, privileged, and not likely to lead to the discovery of admissible evidence. As explained in more detail below, the City requests that portions of Plaintiff's subpoena be quashed or limited to avoid the undue burden of producing such information on the City.

1

A. <u>Background.</u>

Plaintiff initiated this case on September 5, 2017. It involves an incident that occurred outside a hospital on December 22, 2015, between Plaintiff and three peace officers employed by the Aurora Police Department ("APD" or "Department"). Plaintiff alleges that, during the incident, the two officers and one sergeant violated her rights under the Fourth Amendment of the U.S. Constitution. The three Defendants are named in their individual capacities. The claims in the Complaint, all deriving from the Fourth Amendment, are:

> (1) excessive force (Defendants Hawkins, Odneal);
> (2) unlawful seizure (Defendant Hawkins);
> (3) unlawful arrest/detainer (all Defendants); and
> (4) malicious prosecution (all Defendants).

*See* Compl., pg. 8-10 (Doc. 1).

There are no *Monell* claims[1] against the City nor any allegations in the Complaint that the City or the APD failed to train, supervise or otherwise control Defendants. *See Id.*

On October 27, 2017, counsel for Plaintiff contacted the City regarding a subpoena for records. The City waived service of a Subpoena to Produce Documents, Information, or Objects in a Civil Action on October 30, 2017 (the "Subpoena"). The Subpoena commands production of the following categories of documents (numbers below are added for ease of discussion):

> 1. Training records for Defendants during their employment with the APD.

---

[1] The claim is based on a case called *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978).

2. All internal investigations that involved claims of misconduct by Defendants during their employment with the APD.

3. All complaints, whether formal or informal, alleging the use of excessive force or the violation of civil rights by Defendants during their employment with the APD.

4. Any disciplinary actions taken against Defendants during their employment with the APD.

5. The entire personnel files for Defendants based on their employment with the APD.

6. All documents related to the December 22, 2015 incident, including reports or documents created pursuant to any internal affairs investigation into the incident.

7. APD's policies, procedures, and actual practices in place on December 22, 2015 concerning: arrest; use of force; interviewing witnesses; interacting with witnesses; interviewing victims; interacting with victims; and internal investigation of uses of force by APD officers.

8. APD's current policies, procedures, and actual practices concerning the same categories as stated in #7 above.

9. All documents evidencing the names, addresses, email addresses, and telephone numbers of each person who was booked into and/or held at the Aurora City Jail on December 22, 2015.

10. All video and/or audio recordings of the Plaintiff from December 22, 2015, including but not limited to video and/or audio recordings from the Aurora City Jail.

A true and accurate copy of the Subpoena is attached as Exhibit A.

Without waiving any of the arguments it sets forth below, the City intends to produce responsive documents to requests number 1, and numbers 7 through 10, to the extent responsive documents are in its possession and control. It also intends to produce

3

documents responsive to request number 6 pertaining to incident on December 22, 2015, except for any internal investigation documents. This Motion to Quash involves requests numbers 2 through 5 and that portion of request number 6 regarding production of any internal investigation into the incident.

### B. *Legal Standard.*

"[A] nonparty may be compelled to produce documents and tangible things or to permit an inspection." Fed. R. Civ. P. 34(c). Rule 45 of the Federal Rules of Civil Procedure governs discovery from non-parties by subpoena. The Court may quash a subpoena upon a showing of: (i) insufficient time for compliance; (ii) travel more than 100 miles; (iii) disclosure of privileged or other protected matter; or (iv) undue burden. Fed. R. Civ. P. 45(d)(3)(A). The onus is on the party or attorney who issues the subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). These provisions are meant to protect non-parties during their "involuntary assistance to the court." Fed. R. Civ. P. 45 (Advisory Committee Notes, 1991 Amendment, Subdivision (c)). Determining an undue burden is a case-specific inquiry and turns on relevancy, the need for the requested documents, the breadth of the request, the stated time period, the particularity in the description of the documents, and the burden imposed. *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw*, 211 F.R.D. 658, 663 (D. Kan. 2003) (internal citations omitted). The Tenth Circuit recognizes the balancing test for quashing a subpoena based upon undue burden. *Goodyear*, 211 F.R.D. at 663.

Although relevancy is not included in Rule 45's list of reasons for quashing a subpoena, "the scope of discovery under a subpoena is the same as the scope of discovery under Rules 26(b) and 34." *Goodyear*, 211 F.R.D. at 662. "Thus, the court must examine whether a request contained in a subpoena is overly broad or seeks irrelevant information under the same standards as set forth in Rule 26(b) and as applied to Rule 34 requests for production." *Id.*

The applicable statutory privileges are both federal privileges and state statutory privileges permitted under federal law. *BPS v. Bd. of Trs. for Colo. Sch. for the Deaf & Blind*, Civil Action No. 12-cv-02664-RM-KLM, 2014 U.S. Dist. WL 3742938, at *7-8 (D. Colo. 2014) (*citing Pearson v. Miller*, 211 F.3d 57, 62 (3d Cir. 2000)). "Federal statutory privileges may be created when a statute explicitly protects information or documents from civil discovery or provides for confidentiality." *Auguste v. Alderden,* 2008 WL 3211283, at *11 (D. Colo. 2008). Additionally, "even when a state privilege is not permitted as a matter of federal law, the Court should 'at least consider [the state statutory] 'privilege,' as well as the confidentiality interests otherwise protected' by them." *BPS,* WL 3742938, at *7-8 (internal citations omitted). In *BPS*, the Court considered the school's argument that state statute protected records on student sexual assault allegations. *Id.*

### C. *Defendants have a Privacy Interest in Personnel Files and Internal Affairs Files.*

Plaintiff's requests for all internal investigative files for any allegation of misconduct and entire personnel files for the Defendants invoke a privacy interest that each of them hold and that the City has an obligation to protect. "Information is constitutionally protected when a legitimate expectation exists that it will remain confidential while in the

5

state's possession." *Mangels v. Pena*, 789 F.2d 836, 839 (10th Cir. 1986) (internal citations omitted).  An officer's expectation of nondisclosure is supported by the Colorado Open Records Act, § 24-72-204(2)(a)(I) and (3)(a)(II), C.R.S. and the Colorado Criminal Justice Records Act, § 24-72-305(5), C.R.S. Both sanction the nondisclosure of the internal affairs and personnel records requested by the Plaintiff in this case. Additionally, Section 3-16 of the Aurora City Charter provides for the confidentiality of statements made in an internal affairs investigation. Furthermore, APD Directives provide that all internal affairs files are confidential, and limits their disclosure not only as to external entities, but also internally. Finally, as part of any non-criminal internal investigation, officers are required to review and sign what has become known as the *Garrity* advisement. The APD's *Garrity* advisement provides that "[t]he statement shall be confidential and neither the statement nor any information contained therein, nor the answers to questions shall be disclosed."

When a legitimate expectation exists, there must be a showing of a compelling state interest prior to requiring the production of personal and internal inspection records. *Denver Policemen's Protective Ass'n v. Lichtenstein*, 660 F.2d 432, 436 (10th Cir. 1981). A compelling state interest can be seeking proof to sustain a civil claim against an officer, but must be stated in a manner that is the least intrusive with respect to the defendant's right to confidentiality. *Id.*

Defendants in this case have at least a limited expectation of nondisclosure and confidentiality related to any personnel and internal affairs records maintained by the City and the APD.  Because of the confidential requirements imposed on these records,

individuals, both other officers and citizens not involved in this case, also have an expectation of privacy when it comes to the investigation into their conduct or their complaints, as well as the information provided to the Internal Affairs Bureau.

> D. <u>With No Narrow Limit in Scope of Time, Plaintiff's Requests for Personnel Files, Disciplinary Actions, Complaints, and Internal Investigations are Overbroad and Seek Information Irrelevant to the Claims in this Case.</u>

### 1. Entire Personnel Files and All Disciplinary Actions.

The City's Human Resources Department maintains a personnel file for each of its employees, including police officers. The personnel file contains contact and family information, marriage and birth certificates, tax and benefit information, applications, evaluations, some discipline information, and compensation information. The personnel file is distinct and separate from the APD's training files, internal affairs files, and complaint files. Considering the items in the City's personnel files, Plaintiff's request for the entirety of Defendants' personnel files is overbroad and burdensome.

Personnel files of individuals either involved in the act at issue or those who had a role in the decision that gives rise to a lawsuit may be "relevant and/or reasonably calculated to lead to the discovery of admissible evidence, and therefore discoverable." *Auguste v. Alderden*, 2008 WL 3211283, *31 (D.Colo. 2008) (internal citations omitted). However, the request should be tailored to documents directly related to the claims at issue. *Reagan-Touhy v. Walgreen CO.*, 526 F.3d 641, 648 (10th Cir. 2008) ("[P]ersonnel files often contain sensitive personal information … This is not to say personnel files are categorically out of bounds … had [the plaintiff] issued a more narrowly targeted request … we would face a very different question."). Even in *Auguste*, a Section 1983 case, the

7

requesting party limited the scope of the request for a personnel file to "documents in [the] personnel file that relate to complaints … filed against [defendant] regarding search warrants in the past, or instances of failures to follow procedure for search warrants." *Auguste*, 2008 WL 3211283, at *32.

Here, Plaintiff requests "[t]he *entire* personnel file" and "*all* disciplinary actions" for each of the Defendants during the entirety of their employment with the APD. Ex. A, at 1 (emphasis added). There is no limit on the categories of information sought related to the specific claims asserted against each Defendant (excessive force for Hawkins and Odneal, unlawful seizure for Hawkins, unlawful arrest and malicious prosecution for all Defendants). Further, there is no limit in time. Defendants Ortiz, Odneal, and Hawkins have worked for the City for four years, almost eight years, and twelve and a half years, respectfully. The Subpoena requests any responsive documents for the entirety of their employment.

Without a narrowly targeted request both in scope and time, the requests for personnel files and all disciplinary actions is an undue burden that will result in the production of information for which the Plaintiff has no need in this case, especially documents that have no commonality to the incident at issue or that are five or ten years old.

    **2. All Complaints.**

Plaintiff's request for "all complaints" suffers from a similar problem, even with a limit to those "alleging the use of excessive force or the violation of civil rights." Ex. A, at 1. The term "civil rights" is broad and could encompasses matters outside the scope of

this case and unrelated to the Fourth Amendment. The APD takes numerous complaints by phone as well as online. Complaints of all types are submitted to the Department and tracked to the Internal Affairs Bureau to review and, if warranted, conduct further investigation either at the Internal Affairs Bureau level or at the supervisory level. Even with a request for complaints regarding the three Defendants, the broad scope of the request for complaints is an undue burden in that it results in the production of complaints for which the Plaintiff has no need in this case, especially documents that have no commonality to the incident at issue or are five or ten years old.

### 3. All Internal Investigative Files.

Plaintiff requests "*all* internal investigations that involved *claims of misconduct*" for each Defendant during their entire term of employment. Ex. A, at 1 (emphasis added). The Internal Affairs Bureau maintains the internal investigation files. Like the request for personnel files and complaints, Plaintiff's request for all misconduct investigations is overly broad to the point of being an undue burden. The APD Directives Manual has over seventeen chapters covering a wide variety of personnel and policing issues. *See* APD Directives, https://www.auroragov.org/residents/public_safety/police/police_directives_manual/ (last visited Nov. 17, 2017). The Internal Affairs Bureau conducts investigations on everything from motor vehicle accidents to performance issues; missed shifts to arrest tactics and force used in an incident; unintentional firearm discharges with no victim to officer-involved-shootings. The result of an internal investigation, as determined by the Chief of Police following recommendations and various internal reviews, can be

unfounded, exonerated, not sustained, policy failure, or a sustained violation of policy. *See* APD Directives Manual, Directive 10.2, website *supra.*.]

Plaintiff seeks all types of internal investigations. In doing so, she discounts the variety of complaints investigated by the Internal Affairs Bureau and the interests of other officers and citizens, unrelated to this case in any manner, in the information they provide to Internal Affairs. This request is not sufficiently tailored in order to establish a compelling need for documents that may relate to her Fourth Amendment claims. The information sought is not reasonably calculated to the lead to the discovery of admissible evidence especially since Plaintiff has not made claims against the City.

E. <u>Internal Investigations that are Reasonably Calculated to Lead to the Discovery of Admissible Evidence are Privileged.</u>

Even if the request for internal investigations were reasonably calculated to lead to the discovery of admissible evidence, privilege may still prevent the disclosure of such information.  In addition to a general request for internal investigations, Plaintiff also seeks "reports or documents created pursuant to an internal affairs investigation into the December 22, 2015 incident" giving rise to this lawsuit. Ex. A, at 1 (portion of #6).  That investigation is pending. Shortly after this lawsuit was filed, the APD publically announced that the Chief of Police directed the incident to be investigated by the Internal Affairs Bureau. *Lawsuit Accuses Aurora Police of Excessive Force During Arrest*, Sept. 5, 2017, at http://kdvr.com/2017/09/05/lawsuit-accuses-aurora-police-of-excessive-force-during-arrest/ (last visited Nov. 17, 2017). Internal investigations, particularly pending internal affairs investigations, are protected from disclosure pursuant to the official information privilege. Sometimes also called "the deliberative process privilege," this privilege can

protect pending internal affairs investigations. Based on this privilege and the lack of claims against the City, the Plaintiff is not entitled to the requested information.

### 1. Official Information Privilege.

The official information privilege has been described as "the government's privilege to prevent the disclosure of information whose disclosure would be contrary to the public interest." *Everitt v. Brezzel,* 750 F. Supp. 1063, 1066 (D. Colo. 1990) (*quoting Frankenhauser v. Rizzo*, 59 F.R.D. 339, 342 (E.D. Pa. 1973)). The *Everitt* court utilized the balancing approach of determining the application of the official information privilege as stated in *Frankenhauser*. *Id.* at 1066-67. There are ten considerations to evaluate when deciding whether to apply privilege to police investigation files in a civil rights case:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information;
> (2) the impact upon persons who have given information of having their identities disclosed;
> (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure;
> (4) whether the information sought is factual data or evaluative summary;
> (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question;
> (6) whether the police investigation has been completed;
> (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation;
> (8) whether the plaintiff's suit is non-frivolous and brought in good faith;
> (9) whether the information sought is available through other discovery or from other sources; and
> (10) the importance of the information sought to the plaintiff's case.

*Frankenhauser*, 59 F.R.D. at 342.

In her Subpoena, Plaintiff requests all internal affairs investigations involving Defendants, read broadly to include all pending investigations, if any, and specifically the

pending internal investigation into the December 22, 2015 incident. The request includes all the factual data, as well as the summary and evaluation.

The entire internal affairs process is an employment-based investigatory process meant to be confidential to not only protect the rights of the employees being investigated, but also to protect the integrity of the process. To disclose the unredacted investigative files to the public can have the effect of chilling open and honest involvement with internal investigations because of the fear of public disclosure for those who make statements about potential policy violations. As stated above, complaints and investigations involve all types of cases including domestic violence incidents, investigations in crimes against children, rape cases, murder cases, as well as citizen contacts with no corollary criminal investigation and co-worker issues. Officers are mandated by policy to participate; citizens participate voluntarily, sometimes sharing sensitive and personal information. Internal investigations focus on *policy* violations, rather than the constitutional analysis related to alleged Fourth Amendment violations that is required in this matter. The investigations can be incredibly detailed in order to offer the best information to the decision-makers regarding the alleged policy violation.

Here, the subject of this litigation are the rights protected by the Fourth Amendment. For Defendant Odneal, the subject of this litigation is more limited and does not include a seizure claim. For Defendant Ortiz, the subject of this litigation is an unlawful detainer and malicious prosecution claim, not excessive force or seizure. There is no municipal liability claim or allegation related to the *investigation* of this incident or similar incidents in the Complaint.  See *Everitt,* 750 F.Supp., at 1069 (discussing how a plaintiff

asserting a *Monell* claim is entitled to officer-specific information and information concerning his superiors' knowledge of violations). The subject of this litigation is not the decision-making process within the supervisory chain of the APD on this or any other incident. The balance of the *Frankenhauser* factors weighs in favor of protection for internal investigations, including pending investigations. Considering Plaintiff's claims in this case, her broad request for disclosure of any internal investigative files is outweighed by the harm that would ensue from such disclosure of internal investigation files.

### 2.  The Impact on the Deliberative Process.

"[F]ederal common law recognizes the deliberate process privilege." *Leadholm v. City of Commerce City*, Civil Action No. 16-cv-02786-MEH, 2017 U.S. 2017 WL 3839454, at *4 (D. Colo. Sep. 1, 2017). The privilege protects "advisory opinions, recommendations, and deliberations that are part of a process by which governmental decisions and policies are formulated." *Id.* (*citing U.S. Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8, 121 S. Ct. 1060, 149 L. Ed. 2d 87 (2001)). The privilege "may be overcome by showing a need by Plaintiff as an overriding public interest." *Olmsted v. McNutt*, 188 F.R.D. 386, 388 (D. Colo. 1999).  "The need determination is made on a case-by-case basis, taking into account factors such as the relevance of the evidence, 'the availability of other evidence, the seriousness of litigation, the role of government, and the possibility of future timidity by government employees." *Fourhorn v. City & Cty. of Denver*, 2009 WL 2407569, at *5-6 (D. Colo. Aug. 3, 2009) (internal citations omitted)

Internal affairs investigations are pre-decisional documents that are designed to assist the Chief of Police in making a determination regarding a policy violation and, if

appropriate, the imposition of discipline. Pursuant to the City Charter, the Chief of Police is vested with the authority to discipline within the Department. Aurora City Charter, Sec. 3-13(8). The internal investigation file is reviewed by various Commanders and Executive Staff members, who make certain recommendations, before it is sent to the Chief for his review and decision. The factual material in an internal investigation file is intertwined with the deliberative material contained in the file, so much so that its disclosure would reveal the deliberative material.

It is important to state that disclosure of a pending internal investigation may also interfere with the investigation itself. APD officers do not have access to internal investigations until the end of the investigation and, even then, they are only permitted to review the file. They are not allowed a copy of the file. Disclosure of this pending internal investigative file to the Plaintiff will mean disclosure by the Plaintiff to the Defendants, who are the subjects of the investigation. Disclosure of a pending internal affairs investigation in civil litigation would undermine the process that is afforded to officers involved in internal investigations. It would also undermine the integrity of the investigation, giving the subject officers early insight into the investigative strategy.

Plaintiff's request for pending internal affairs investigations, specifically the pending investigation into the incident giving rise to this litigation, is outweighed by the deliberative process privilege which will help protect the internal investigation process that leads to discipline determinations within the Department.

## CONCLUSION

For the reasons set forth above, the City respectfully requests an order quashing those portions of the Subpoena that request privileged and otherwise protective information, and that are overbroad and not likely to lead to the discovery of admissible evidence on the claims asserted by the Plaintiff against the Defendants. In the alternative, the City requests an order modifying the Subpoena and providing for an *in camera* review[2] for any documents that would help inform the Court's decision. Finally, the City requests a protection order, in a form to be provided by the City, with regard to any documents the Court may ordered to be produced following its review of the briefing on this motion and/or following its *in camera* review.

Respectfully submitted this 19th day of November, 2017.

*s/Nancy C. Rodgers*
Nancy C. Rodgers
OFFICE OF THE AURORA CITY ATTORNEY
15151 E. Alameda Parkway, Suite 5300
Aurora, CO 80012
Telephone: 303-739-7030
Facsimile: 303-739-7042
Email: nrodgers@auroragov.org
*Attorney for City of Aurora, Colorado*

---

[2] *In camera* inspection has been sanctioned as an appropriate means for disclosure. *Lichtenstein,* 660 F.2d at 436.

## CERTIFICATE OF SERVICE

       I hereby certify that on the 19th day of November 2017, I electronically filed the foregoing NON-PARTY CITY OF AURORA MOTION TO QUASH PLAINTIFF'S SUBPOENA with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Adam Frank, adam@fas-law.com,  *Attorney for Plaintiff Williams*
Faisal Salahuddin, fas@fas-law.com, *Attorney for Plaintiff Williams*
Jonathan M. Abramson, jonathan@kandf.com, *Attorney for Defendant Ortiz*
Michael T. Lowe, mlowe@brunolawyers.com, *Attorney for Defendants Hawkins, Odneal*


                                      *s/ Nancy C. Rodgers*
                                      Nancy C. Rodgers