IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02123-REB-KMT

OYZHANA WILLIAMS,

    Plaintiff,

v.

MICHAEL HAWKINS, Aurora Police Sergeant, in his individual capacity;
JORDAN ODNEAL, Aurora Police Officer, in his individual capacity;
JOSE ORTIZ, Aurora Police Officer, in his individual capacity,

    Defendants.

## RESPONSE TO CITY OF AURORA'S MOTION TO QUASH SUBPOENA

Ms. Williams, through counsel, respectfully submits the following response to the City of Aurora's motion to quash Ms. Williams' subpoena:

### INTRODUCTION

On December 22, 2015, Ms. Williams brought her boyfriend to the hospital with a gunshot wound. She was not suspected of breaking any law. Rather than treat Ms. Williams as the traumatized loved one of a critically injured person, Aurora Police Department officers ensured that night would be the worst of Ms. Williams' life. While investigating what happened to Ms. Williams' boyfriend, Defendant Hawkins illegally ordered Ms. Williams to surrender car keys, illegally seized the car keys from Ms. Williams, falsely claimed that Ms. Williams failed to relinquish the car keys, and used this false claim as purported justification for arresting Ms. Williams. To make the illegal arrest, Defendant Hawkins threw Ms. Williams out of the back of a police car, choked her, bent her back over the trunk of the police car, and with the help of Defendant

1

Odneal, slammed Ms. Williams to the ground, causing her head to bounce on the pavement. After Ms. Williams had been handcuffed, Defendant Hawkins walked up to Ms. Williams' head, looked at it, and stomped on it. Defendant Ortiz witnessed the assault. Rather than report his fellow officers to Internal Affairs for their flagrantly unconstitutional actions, he wrote a false probable cause affidavit to support arresting and charging Ms. Williams with assaulting a police officer, a charge that carried a mandatory penalty of four to twelve years in prison.

In this factual posture, the City of Aurora makes the brazen claim that the Defendant officers' history of misconduct is not properly subject to Ms. Williams' subpoena. The City contests Ms. Williams' subpoena of five categories of documents: 1) Personnel files for each Defendant; 2) Disciplinary actions against each Defendant (which happen to be housed in each Defendant's personnel file); 3) Complaints alleging civil rights violations against each Defendant; 4) Past internal affairs investigations of each Defendant; and 5) the 12/22/2015 internal affairs investigation. This Court should reject the City's attempt to shield this plainly-discoverable evidence from discovery.

## ARGUMENT

Ms. Williams is entitled to discover each of the five categories of documents the City seeks to shield from disclosure. Aurora's motion to quash asserts that the five categories are either protected/privileged or that producing the subpoenaed documents presents an undue burden. *See* Fed. R. Civ. P. 45(d)(3)(A). While Ms. Williams will address the City's arguments regarding privilege for each category in turn, as an initial matter this Court should reject the City's broad-reaching yet unsupported claim that producing documents for any of the five categories presents an undue burden.

2

**I. Aurora has failed to show that producing any of the subpoenaed documents presents an undue burden**

### A. Legal standard for demonstrating an undue burden

An entity may seek to quash a subpoena by arguing that compliance with the subpoena causes the entity an undue burden. Fed. R. Civ. P. 45(d)(3)(A)(iv). "The party objecting to discovery on the basis that it is unduly burdensome has the burden of proof." *Rehberg v. City of Pueblo*, No. 10-cv-00261-LTB-KLM, 2011 U.S. Dist. LEXIS 58776, at *15 (D. Colo. June 2, 2011). "[A] party seeking protection based upon undue burden or expense must submit affidavits or otherwise explain in detail the nature and the extent of the claimed burden or expense." *Colo. Mills, LLC v. Phila. Indem. Ins. Co.*, No. 12-cv-01830-CMA-MEH, 2013 U.S. Dist. LEXIS 53467, at *15 (D. Colo. April 15, 2013). This entails demonstrating "not only undue burden or expense, but that the burden or expense is unreasonable in light of the benefits to be secured from the discovery." *Id*. The standard "can only be met by providing sufficient details or a compelling showing of undue burden to obviate the overwhelming preference for requiring that relevant discovery materials be exchanged." *Chevron Corp. v. Snaider*, 78 F. Supp. 3d 1327, 1341 (D. Colo. 2015). "General assertions of undue burden and expense are insufficient alone to foreclose discovery; especially when, as here, the discovery is highly relevant." *Id*. Applying this standard in a 42 U.S.C. § 1983 case alleging Fourth Amendment violations, this District holds that even where a plaintiff requests hundreds of internal affairs files, producing the files does not present an undue burden absent detailed affidavits explaining the particularities of the burden. *Rehberg*, 2011 U.S. Dist. LEXIS 58776, at *14-*15 (producing 405 law enforcement internal affairs files did not present an undue burden to the city.).

### B. Aurora has not demonstrated *any* burden, let alone an undue burden

Throughout Aurora's motion to quash, the City makes general claims that compliance with Ms. Williams' subpoena would cause an undue burden. However, Aurora failed to present even a scintilla of evidence to support its claims. The City has thus failed to meet its burden of proof and this Court should reject its claims.

### II. Aurora must disclose the Defendants' personnel files, including the disciplinary information they contain

Ms. Williams learned from Aurora's motion to quash that the City keeps seven categories of information in its employees' personnel files. ECF No. 23, p. 7. Of these categories, Ms. Williams seeks only the Defendants' (1) evaluations, (2) disciplinary information, and (3) applications (presumably for internal positions or promotions).[1]

### A. Standard for disclosing a personnel file in a § 1983 case: *Auguste*

In the context of a § 1983 claim, "an individual's personnel file is . . . discoverable, if the individual is alleged to have engaged in the retaliation or discrimination at issue or played an important role in the decision that gives rise to the lawsuit." *Auguste v. Alderen*, No. 03-cv-2256-WYD-KLM, 2008 U.S. Dist. LEXIS 63201, at *31 (D. Colo. Aug. 6, 2008).[2] This holding applies regardless of whether the plaintiff asserts a *Monell* claim. *Id.* at *31-*32. This holding applies in the face of any privacy concerns triggered by a request for a personnel file. *EEOC v. Dillon Cos.*, No. 09-cv-

---

[1] Aurora's conferral regarding the motion to quash did not include a description of the contents of a City of Aurora personnel file. If it had, Ms. Williams would have limited the "personnel file" portion of her subpoena to these three categories.

[2] The *Auguste* court relied on the rationale of two cases from the District of Kansas. *C.T. v. Liberal Sch. Dist.*, 2008 U.S. Dist. LEXIS 10348, 2008 WL 394217, at *3 (D. Kan. Feb. 11, 2008); *Beach v. City of Olathe*, Nos. 99-2210-GTV, 99-2217-GTV, 2000 U.S. Dist. LEXIS 11759, at *6 (D. Kan. Aug. 6, 2000). Additional Kansas cases also reached the same conclusion. *Oglesby v. Hy-Vee, Inc.*, No. 04-2440-KHV, 2005 U.S. Dist. LEXIS 6456, at *3-*8 (D. Kan. Apr. 13, 2005); *Van Deelen v. Shawnee Mission Sch. Dist.*, No. 03-2018-CM, 2003 U.S. Dist. LEXIS 21528, at *6-*12 (D. Kan. Nov. 24, 2003); *Williams v. Board of County Comm'rs*, No. 98-2485-JTM, 2000 U.S. Dist. LEXIS 8986, at *9-*16 (D. Kan. June 21, 2000).

2237-ZLW-MEH, 2010 U.S. Dist. LEXIS 92724, at *4-*5 (D. Colo. Aug. 13, 2010) ("The Court recognizes the privacy concerns raised by Plaintiff's request," yet orders disclosure of personnel files of those who "played an important rule in the decision or incident that gives rise to the lawsuit.").

### B.  Ms. Williams' subpoena of personnel files passes the *Auguste* test

Ms. Williams' subpoena demands production of the personnel files of Defendants Hawkins, Odneal, and Ortiz. Each defendant played an important role in the December 22, 2015 incident that is the subject of this case. *See supra*, p. 1-2; ECF No. 1, incorporated herein pursuant to Fed. R. Civ. P. 10(c).

### C.  The portions of the Defendants' personnel files Ms. Williams seeks all contain relevant, discoverable information

Under Fed. R. Civ. P. 26(b)(1), Ms. Williams "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . . Information within this scope of discovery need not be admissible in evidence to be discoverable." The three categories of documents Ms. Williams seeks from the Defendants' personnel files each fall well within this rule.

The Defendants' performance evaluations and prior disciplinary actions both contain evidence of the Defendants' history of failing to honor the civil rights of people in Aurora as well as their character for truthfulness. The Defendants' applications for internal positions and promotions contain the Defendants' explanations of their evaluations and disciplinary history, including their statements about why they believe their conduct merits advancement within the Aurora Police Department. Such documents are likely admissible and also reasonably calculated to lead to further admissible evidence. *See Dillon Cos.*, 2010 U.S. Dist. LEXIS 92724, at *4 (approving of

Case 1:17-cv-02123-REB-KMT   Document 32   Filed 12/21/17   USDC Colorado   Page 6 of 16

similar reasoning in *Oglesby v. Hy-Vee, Inc.*, 2005 U.S. Dist. LEXIS 6456, at *8); *see also* Fed. R. Evid. 404(b) (prior acts admissible to show motive, intent, knowledge, absence of mistake or accident), 406 (habit), 608(b) (character for truthfulness). Furthermore, such evidence is per se discoverable under *Auguste* and *Dillon Construction*. *See supra*, part II.A.

Aurora's citationless argument that the potential age of some of the subpoenaed documents should preclude their production is unpersuasive. First, as Aurora states in its motion, none of the Defendants have worked for Aurora for a particularly long time, with only Defendant Hawkins exceeding ten years of employment with the City. ECF No. 23, p. 8. Based on the duration of each of their employment, all documents in Defendant Ortiz's and Odneal's files will be at most four and eight years old, respectively. Second, even regarding subpoenaed documents addressing Defendant Hawkins that are over ten years old, none of Fed. R. Evid. 404(b), 406, or 608(b) contain the age-based bar on admissibility contained in other rules. *See* Fed. R. Evid. 609. Discoverability is tied to finding evidence that may be admissible, and the rules of evidence provide no reason to preclude Ms. Williams from discovering all Defendants' prior evaluations, discipline, and applications, even those over ten years old.

### D. Aurora's privacy interest claims fail

None of the privacy interests Aurora asserts preclude discovery of the documents Ms. Williams has subpoenaed from the Defendants' personnel files. The Tenth Circuit holds that, when deciding whether to bar discovery of documents based on a claim of privacy, "the court must consider (1) if the party asserting the right has a legitimate expectation of privacy, (2) if disclosure serves a compelling state interest, and

(3) if disclosure can be made in the least intrusive manner." *Denver Policemen's Protective Ass'n v. Lichtenstein*, 660 F.2d 432, 436 (10th Cir. 1981) (adopting Colorado's *Martinelli* test). If the party asserting the right has no legitimate expectation of privacy in the contested documents, that is the end of the inquiry. *Flanagan v. Munger*, 890 F.2d 1557, 1570 (10th Cir. 1989) (disposing of a privacy claim because it failed the first prong of the *Martinelli* test).

In *Flanagan v. Munger*, the Tenth Circuit rejected the arguments Aurora now advances. Aurora claims that the Colorado Open Records Act, Colorado Criminal Justice Records Act, Aurora City Charter, and internal Aurora policies give the Defendants a legitimate expectation of privacy in the subpoenaed material. ECF No. 23, p. 6. Similarly, the resisting entity in *Flanagan* "point[ed] to city policy, regulation, and custom which states that information in personnel files will be kept confidential." *Flanagan*, 890 F.2d at 1571. Faced with such a claim, the Tenth Circuit held:

> The presence of privacy statutes and regulations may inform our judgment concerning the scope of the constitutional right to privacy. However, such local acts, standing alone, fall far short of the kind of proof necessary to establish a broadly recognized, reasonable expectation of privacy which has been identified by precedent.

*Id.* In *Flanagan* as here, the records at issue were "documents related simply to the officers' work as police officers." *Id.* at 1570. Under both *Flanagan* and *Lichtenstein*, such documents are not protected from discovery; "only highly personal information is protected." *Id.* at 1570; *Lichtenstein*, 660 F.2d at 435. As the Tenth Circuit stated, "We are unwilling to hold that a reprimand of a public employee is of a highly personal nature [so as to] create[] a constitutional expectation of privacy." *Flanagan*, 890 F.2d at 1571.

Per *Flanagan*, there is no need for this court to proceed to the second and third prongs of the *Lichtenstein* test. *Flanagan*, 890 F.2d at 1570. The Defendants have no reasonable expectation of privacy in the requested portions of their personnel files.[3] The proposition that public employee personnel files are discoverable in civil rights litigation is so clearly established that modern courts bypass the above analysis and simply hold the files discoverable. *See, e.g.*, *Dillon Cos.*, 2010 U.S. Dist. LEXIS 92724, at *2-*6.[4]

Finally, it bears mentioning that the Defendants themselves have taken no steps to claim a privacy interest in the subpoenaed records. While "[t]he general rule is that a party has no standing to quash a subpoena served upon a third party," an exception exists where "there is a privacy interest applicable." *Windsor v. Martindale*, 175 F.R.D. 665, 668 (D. Colo. 1997).[5] Where a party does not assert its own claim of privilege, "courts routinely deny [one entity] the standing to assert a third party's right, including

---

[3] Should the Court disagree with Ms. Williams and find that examination of the second and third prongs of the *Lichtenstein* test is necessary, the subpoenaed documents from the Defendants' personnel files are nonetheless discoverable. Regarding the second prong, "Assuming that the police officers have a legitimate expectation of privacy, the right may be overridden by a compelling state interest. The compelling state interest involved here is ascertainment of the truth. . . . The need to develop all relevant fact in the adversary system is both fundamental and comprehensive. . . . The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence." *Lichtenstein*, 660 F.2d at 436. The same compelling interest from *Lichtenstein* is present here: ascertainment of the truth in a matter of great public concern: police brutality. Regarding the third *Lichtenstein* prong, while Ms. Williams believes she is entitled to the subpoenaed records without a protective order, she certainly prefers receiving the subpoenaed records subject to a protective order to not receiving them at all. If this Court reaches the third *Lichtenstein* prong, Ms. Williams would consent to receiving the records under a protective order.

[4] *Cf. Rehberg*, 2011 U.S. Dist. LEXIS 58776, at *13 (Addressing city's claim that producing citizen complaint files would violate the privacy rights of the complainants, holding that, "As a preliminary matter, even if the requested information is confidential, that would not automatically remove it from the scope of permissible discovery. Given that the standard for permissible discovery is purposely broad, the presumption favors disclosure. This is particularly true here where the party seeking protection is a public entity. Even when valid privacy interests are at issue, it is often the case that those interests must yield to the requesting party's right to receive all information relevant to the applicable claims or defenses." (internal quotations and citations omitted)).

[5] *Accord McFadden v. Town of Meeker*, No. 16-cv-2304-WJM-GPG, at *8 (D. Colo. Feb. 25, 2017); *Charles Schwab & Co. v. Highwater Wealth Mgmt., LLC*, No. 17-cv-00803-CMA-NYW, 2017 U.S. Dist. LEXIS 158175, at *9 (D. Colo. Sept. 27, 2017).

[claims of] privilege." *Seabron v. Am Family Mut. Ins. Co.*, 862 F. Supp. 2d 1149, 1159 (D. Colo. 2012). If Defendants believed they had a privacy interest in the subpoenaed records, they would have asserted it. Their silence speaks volumes.

### III. Aurora must disclose all complaints concerning civil rights violations leveled against all Defendants

Aurora's sole argument (other than its unsupported claim of an undue burden) for resisting production of civil rights complaints filed against the Defendants is an unsupported claim that Ms. Williams' subpoena exceeds the bounds of discoverable material under Fed. R. Civ. P. 26. This argument is meritless. "A request for discovery should be allowed unless it is clear that the information sought can have no possible bearing on the subject matter of the action. When the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevance." *Beach v. City of Olathe*, 203 F.R.D. 489, 496 (D. Kan. 2001). The City has made no efforts to meet its burden. Formal and informal complaints regarding a civil rights defendant's past violations of civil rights fall within Fed. R. Civ. P. 26. *Rehberg*, 2011 U.S. Dist. LEXIS 58776; *Auguste*, 2008 U.S. Dist. LEXIS 63201, at *30-*32. This is true even where there is no *Monell* claim. *Id.*

### IV. Aurora must disclose both the internal affairs investigation into the December 22, 2015 incident between Ms. Williams and the Defendants and all other internal affairs investigations into the Defendants

Aurora's internal affairs (IA) investigation into the incident giving rise to this case contains vital factual information concerning the core allegations in Ms. Williams' case, including recorded statements from the Defendants concerning their beliefs, intent, and actions during their interactions with Ms. Williams on December 22, 2015. Such material cannot be shielded from discovery by a claim of either privilege or privacy.

9

As a preliminary matter, Aurora's privacy arguments for shielding the IA files fail. First, IA files are not personnel files and therefore warrant no privacy protection.[6] Second, just like the disciplinary actions addressed in part II, *supra*, the IA investigations contain "documents related simply to the officers' work as police officers," not "highly personal information." *Flanagan*, 890 F.2d at 1570. For the same reasons described in part II, no Defendant's privacy interest shields IA files from disclosure.

Aurora's deliberative process privilege argument fails as well.

### A. Legal standards concerning the deliberative process privilege[7]

Aurora has the burden to establish that the deliberative process privilege applies to the subpoenaed documents. "[P]rivileges . . . have the potential for withholding relevant information from the finder of fact, and for that reason the party asserting the privilege has the burden of proving each element of the privilege." *S.E.C. v. Nacchio*, No. 05-cv-00480-MSK-CBS, 2009 U.S. Dist LEXIS 8365, at *13 (D. Colo. Jan. 29, 2009), *aff'd*, 704 F. Supp. 2d 1099 (D. Colo. 2010). "The case law does not articulate a specific burden of proof, but an agency can meet its burden through the submission of evidence such as affidavits, a detailed privilege log, and other evidence." *King v. Glanz*, No. 12-cv-137-JED-TLW, 2013 U.S. Dist. LEXIS 175899, at *5 (N.D. Okla. Dec. 16, 2013). "As with all privileges, the deliberative process privilege must be narrowly

---

[6] *See Jefferson Cty. Educ. Ass'n v. Jefferson Cty. Sch. Dist. R-1*, 378 P.3d 835, 837 (Colo. 2016) (public school teacher's request for sick leave as part of alleged "sick out" not part of personnel file; ordered disclosed); *Daniels v. City of Commerce City*, 988 P.2d 648, 651 (Colo. App. 1999) (sexual harassment complaints against city employees and subsequent investigations not part of personnel file; ordered disclosed); *Denver Post Corp. v. Univ. of Colo.*, 739 P.2d 874, 877 (Colo. App. 1987) (records of internal investigation into misconduct by public employees not part of personnel file; ordered disclosed).
[7] The deliberative process privilege and official information privilege are two names for the same privilege. *See Fourhorn v. City & Cnty. of Denver*, No. 08-cv-01693-MSK-KLM, 2009 U.S. Dist. LEXIS 71042, at *4 (deliberative process privilege also known as official information privilege).

construed." *Nacchio*, 2009 U.S. Dist LEXIS 8365, at *13 (citing *Redland Soccer Club, Inc. v. Dep't of Army*, 55 F.3d 827, 856 (3rd Cir. 1995)).

The deliberative process privilege itself is narrow. "For the deliberative process privilege to apply, [Aurora] must demonstrate that the documents are pre-decisional and deliberative, meaning the documents actually must be related to the process by which policies are formulated." *Moreland Properties, LLC v. City of Thornton*, No. 07-cv-00716-EWN-MEH, 2007 U.S. Dist. LEXIS 64755, at *4 (D. Colo. Aug. 31, 2007). The "privilege does not shield documents that simply state or explain a decision." *Schwartz v. Jefferson Cnty. Dep't of Human Servs.*, No. 09-CV-00915-WJM-KMT, 2013 U.S. Dist. LEXIS 99164, at *9 (D. Colo. July 15, 2013); *Fourhorn*, 2009 U.S. Dist. LEXIS 71042, at *5. "Further, the deliberative process privilege does not protect 'memoranda consisting only of compiled factual material or purely factual material contained in deliberative memoranda and severable from its context.'" *Schwartz*, 2013 U.S. Dist. LEXIS 99164, at *10 (quoting *EPA v. Mink*, 410 U.S. 73, 87-88 (1973).

Even if Aurora establishes that the subpoenaed documents fall within the deliberative process privilege, the privilege is only a qualified privilege which Ms. Williams can overcome. "A litigant may obtain deliberative materials if his or her need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure." *FTC v. Warner Commc'ns, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984); *see also Fourhorn*, 2009 U.S. Dist. LEXIS 71042, at *5 ("The deliberative process privilege is a qualified privilege, meaning that it is not absolute."). Courts analyze four factors in determining whether a litigant's need overcomes the privilege: "(1) the relevance of the evidence; (2) the availability of other evidence; (3) the

government's role in the litigation; and (4) the extent to which the disclosure would hinder frank and independent discussion regarding contemplative policies and decisions." *Moreland Properties*, 2007 U.S. Dist. LEXIS 64755, at *5.

In cases involving police misconduct, courts give far less deference to the deliberative process privilege. "Where disclosure may shed light on government misconduct, the privilege generally must yield as it is only meant to protect government deliberations that promote the public's interest in honest governmental action." *Fourhorn*, 2009 U.S. Dist. LEXIS 71042, at *6.[8] "Courts have consistently found that the privilege is outweighed by the interest in disclosure where a case is based on alleged violations of federally-protected civil rights." *Id.* at *5 (quoting *Hinsdale v. City of Liberal*, No. 96-1249-FGT, 1997 U.S. Dist. LEXIS 13779, at *4 (D. Kan. Aug. 27, 1997)).[9]

### B. Aurora must disclose the subpoenaed IA files

Aurora has done nothing to meet its burden to show the subpoenaed documents should not be disclosed. It has not produced a privilege log. It has not produced a *Vaughn* index. It attached no affidavits to its motion to quash. It made no attempt to segregate allegedly-privileged content from plainly non-privileged content. It has not produced any portions of the IA files that are not privileged. For example, barring a truly incompetent investigation, the December 22 IA file contains interviews with each

---

[8] *See also Denver First Church of the Nazarene v. Cherry Hills Vill.*, No. 05-cv-02463-WDM-MEH, 2006 U.S. Dist. LEXIS 49483, at *18 (D. Colo. July 19, 2006) ("If governmental misconduct in the deliberative process is at issue, many courts find this to weigh in favor of overriding the privilege under the preceding factors. . . . Other courts take the position that the deliberative process privilege simply does not apply when governmental misconduct is the focus of the lawsuit.").

[9] "[C]ourts across the country have shown the privilege is inappropriate to protect information from internal affairs investigations in § 1983 cases against police departments and cities." *Doe v. City of San Antonio*, No. SA-14-CV-102-XR, 2014 U.S. Dist. LEXIS 161434, at *5-*6 (W.D. Tex. Nov. 17, 2014) (citing, *e.g.*, *Soto v. City of Concord*, 162 F.R.D. 603, 612 (N.D. Cal. 1995); *Williams v. City of Boston*, 213 F.R.D. 99, 101-02 (D. Mass. 2003)).

Defendant concerning the incident underlying this case, as well as other factual documents. These interviews are obviously not privileged. *See Schwartz*, 2013 U.S. Dist. LEXIS 99164, at *10. Aurora's unsupported claim that the investigations are ongoing does not change this conclusion.[10] Given Aurora's utter failure to meet its burden, the Court should deny Aurora's claim of privilege in its entirety.[11]

### C. Ms. Williams has an urgent need for the December 22, 2015 IA file

Should the Court find that Aurora has met its burden to show that the deliberative process privilege applies to December 22, 2015 IA file, this Court should nonetheless order disclosure. The IA file stemming from the December 22, 2015 incident contains the most important documents and computer files in this case. Addressing the *Moreland Property* factors, first, the December 22, 2015 IA file contains recordings of the Defendants being interrogated about the unconstitutional actions they took against Ms. Williams and giving their explanations. No information could be more relevant. Second, no other evidence could offer the same level of detail and description regarding the incident in question; the Defendants' police reports do not come close. Third, given that this litigation is against Aurora's officers, the City's role in the litigation further suggests

---

[10] *See* Ex. 1, Tr. 12:5-21, *Hunter v. City & Cnty. of Denver*, No. 12-cv-02682-JLK-MJW (D. Colo. June 26, 2014) ("THE COURT: Well, let me just cut this short. The City Attorney's Office is well aware that they pa[id] $10,000 for that same position, during the Wellington Webb administration, and I had all of the Denver Police Department internal affairs files brought here and placed under the jurisdiction of a special master, and I am prepared to do that again if there's any effort by internal affairs bureau, the sheriff's office or the police department to stonewall; that's just not going to be tolerated. . . . I'm not saying it is. I'm just – you know as well as I do what I have done, and I will do it again. MR. SHAPIRO: No. I'm aware of that, Your Honor. The investigation, the last I have heard, is that the Denver Police Department, Internal Affairs Bureau, is doing the investigation. It's still ongoing. It's not complete. THE COURT: Good for them. It's still discoverable."); Ex. 2, *Krantz v. Dulacki*, 14CV34756, at 4 (Denver Dist. Ct. Apr. 30, 2015) (ordering disclosure of IA file despite city's claim that investigation was ongoing).

[11] As with the contested disciplinary documents contained in the Defendants' personnel files, Ms. Williams asserts that none of the City's arguments merit the creation of a protective order restricting use of the documents. However, Ms. Williams again prefers receiving the documents under a protective order to not receiving them at all. Thus, to the extent the Court finds a protective order is appropriate, Ms. Williams consents to receive the subpoenaed documents under such an order.

disclosure. *Cf.* Colo. Rev. Stat. § 29-5-111. Fourth, disclosure of an internal affairs file will not cause sworn police officers to lie to internal affairs in the future. For all these reasons, in a nearly-identical factual posture, this District held that IA investigations into the incident that underlies a civil rights lawsuit must be produced. *Fourhorn*, 2009 U.S. Dist. LEXIS 71042, at *8-*10 (ordering disclosure of "documents prepared by the City's internal affairs bureau which were created during the bureau's investigations into [the civil rights violations] of Plaintiffs.").

### D. Ms. Williams has a compelling need for the Defendants' IA files regarding past misconduct

Should the Court find that Aurora has met its burden to show that the deliberative process privilege applies to the IA files concerning the Defendants' prior misconduct, this Court should still order their disclosure. Addressing the *Moreland Property* factors, First, the Defendants' prior misconduct represents vital admissible evidence that Ms. Williams will use to show the Defendants' motive to violate citizens' civil rights, intent to violate citizens' civil rights, that their actions were not a mistake or accident, that because of their habit of violating civil rights it is more likely that they did so on this occasion, and that they have a history of making untrue statements such as the ones contained in their December 22, 2015 police reports. *See* Fed. R. Evid. 404(b), 406, 608(b). Second, there is no other way for Ms. Williams to secure comparable evidence. For the third and fourth factors, Ms. Williams makes the same argument as in part IV.C, *supra*. Additionally, given that "the discipline imposed may be manipulated to hide the true nature of the underlying conduct leading to the discipline," this Court should order Aurora to disclose all the Defendants' prior IA files, rather than limiting disclosure to certain categories, with Aurora then deciding whether each file meets a category where

the Court has ordered disclosure. *Estate of Rice v. City & Cnty. of Denver*, No. 07-cv-01571-MSK-BNB, 2008 U.S. Dist. LEXIS 42381, at *24-25 (D. Colo. May 27, 2008).

### V. Aurora should be bound by its choice to file a motion to quash with no factual support

This Court should view any subsequent claims and affidavits regarding any supposed undue burden or claim of privilege with skepticism. Given that Aurora filed its motion to quash beyond the deadline established in Fed. R. Civ. P. 45(d)(2)(B), the City had ample time to prepare its motion. Further, Aurora has not sought to supplement its motion in the intervening weeks. In this District, a party "cannot raise new arguments in a reply brief." *In re Molycorp, Inc. Sec. Litig.*, 157 F. Supp. 3d 987, 1003 n.10 (D. Colo. 2016). Should Aurora attempt to supplement its claims of privilege or undue burden in its reply brief, Ms. Williams asks that the Court refuse to consider the late affidavits and argument. In the alternative, Ms. Williams requests a surreply. *See EEOC v. Outback Steak House of Fla., Inc.*, 520 F. Supp. 2d 1250, 1260 (D. Colo. 2007).

### CONCLUSION

For these reasons, Ms. Williams respectfully requests that this Court deny the City of Aurora's motion to quash.

Respectfully submitted, December 21, 2017.

> *s/ Adam Frank*
> Adam Frank
> FRANK & SALAHUDDIN, LLC
> 1741 High Street
> Denver, CO 80218
> Telephone: (303) 974-1084
> Fax: (303) 974-1085
> adam@fas-law.com
> Attorney for OyZhana Williams

15

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.  I further certify that a copy of the foregoing was served via electronic mail through the CM/ECF system, addressed to the following:

Jonathan Abramson
jonathan@kandf.com

Mike Lowe
mlowe@brunolawyers.com

Nancy Rodgers
nrodgers@auroragov.org

Jordan Lubeck
jordan@kandf.com

*s/Lena Andrews*
Paralegal
FRANK & SALAHUDDIN LLC