| | |
|---|---|
| **DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO**<br><br>Court Address:<br>1437 Bannock St., Denver, CO. 80202**,**<br><br>**Charity Krantz,**<br><br>Plaintiff,<br><br>vs.<br><br>**Mary Dulacki,** in her official capacity as Records Coordinator for the Denver Department of Safety**,**<br><br>Defendant, | DATE FILED: April 30, 2015 3:27 PM<br>CASE NUMBER: 2014CV34756<br><br>▲   **COURT USE ONLY**   ▲<br><br>Case Number:<br>14CV34756<br><br>Ctrm: 280 |
| **FINDINGS OF FACT AND CONCLUSIONS OF LAW** | |

THIS MATTER is before the Court upon Plaintiff's request for judicial review of Defendant's refusal to disclose to Plaintiff records concerning an investigation by the Internal Affairs Bureau ("IAB") of the Denver Sheriff Department ("DSD") into Plaintiff's complaint that she was assaulted by a law enforcement officer on or about March 14, 2014, while she was an inmate at the Denver County Jail. The Court held an evidentiary hearing on the matter on January 2, 2015. In light of the evidence adduced at that hearing and the applicable legal authorities, the Court enters the following Findings of Fact and Conclusions of Law.

**FINDINGS OF FACT**

Plaintiff made multiple requests for disclosure of the records[1] pursuant to the Criminal Justice Records Act ("CJRA"), § 24-72-301, et seq., C.R.S., the first on April 15, 2014. Plaintiff agreed, "in the interest of cooperation and efficiency," to wait to inspect the documents until the IAB investigation was completed. By email dated April 22, 2014, Defendant responded to Plaintiff's request for an "estimate on when this will be" by stating that, "it sounds like it might take another month until the review has been completed." Plaintiff made additional written requests in June 2014, September 2014, and November 2014. Each one was answered with a refusal on the ground that

---

[1] Some other records that were not involved in the IAB investigation, such as Plaintiff's medical file, were disclosed and are not at issue in this case.

1

EXHIBIT 2

providing the requested records would be "contrary to the public interest." The explanation of why inspection would be contrary to the public interest varied little: "[t]he investigation into the incident is currently under review and the case has not yet been closed" (June 20, 2014 response); "[t]he review of the investigation into the incident involving your client has not been completed" (September 15, 2014 response); and "[t]he administrative review of the investigation into the incident involving your client has not been completed" (December 3, 2014 response). All three response letters also contained the following statement: "The Department and the public share an interest in a thorough and complete investigation and review into the March 14th, 2014 incident. Maintaining the integrity of that ongoing process outweighs any public purpose to be served by disclosing the requested records at this time."

With respect to when the records were expected to be available, the December 3, 2014 response stated, "[i]t is my understanding that the case is presently in the Conduct Review Office and my best estimate for completion and closure is sometime next month." Plaintiff filed this action on December 18, 2014. It is now late April 2015, more than thirteen months after the incident, and it appears that the administrative status remains unchanged.

At the hearing in this matter, Defendant Dulacki, custodian of the records, testified that the IAB investigation of the incident had been completed several months earlier, but the requested records continued to be withheld because of a blanket Denver Department of Safety policy that nothing in an IAB file can be released until after the investigation is completed, and the entire administrative process concerning possible discipline arising out of the investigation is completed, and the matter is officially closed, no matter how long that might take. Defendant has no authority to make exceptions to this blanket policy; she has no discretion at all to release any such records. Indeed, she does not even look at an IAB file until the administrative review process is completely concluded, including the making of all final decisions concerning discipline. It is not until after a case is "closed" that she undertakes a document by document review of the records in an IAB file and exercises her discretion concerning which documents to release to a requesting party and which to withhold.

Defendant Dulacki testified that there is always a slight chance that, after an IAB investigation is concluded, some follow up investigation might be requested by someone in the chain of the disciplinary process to whom the report of the investigation has been submitted for review and action. This very rarely happens. Although the evidence presented at the hearing provided some support for a general concern about the possibility of an active investigation being compromised by premature release of information about it, the evidence did not provide support for any realistic concern that release of information about a completed investigation will compromise the integrity of the rest of the administrative process, or of any follow up investigation.

**CONCLUSIONS OF LAW**

The parties agree that the records at issue are Criminal Justice Records and the applicable statute governing access to them is the Colorado Criminal Justice Records Act ("CCJRA"), C.R.S. § 24-72-301, *et seq*. The Court has jurisdiction of this matter pursuant to C.R.S. § 24-72-305(7).

Section 24-72-305(5) provides that access to "criminal justice investigatory files," such as those at issue here, may be denied "[o]n the ground that disclosure would be contrary to the public interest…." Section 24-72-305(7) provides that any person denied access to inspect such records may apply to the district court for an order directing the custodian "to show cause why said custodian should not permit the inspection of such record." The Court must hold a hearing and, "[u]nless the court finds that the denial of inspection was proper, it shall order the custodian to permit such inspection…" This statutory language casts the burden upon the custodian to show that denial of access was proper.

A denial of access was proper only if it was the result of the custodian's exercise of sound discretion, taking into account and weighing the various interests implicated by the particular inspection request. In exercising her statutorily conferred discretion, the custodian must consider the following factors: "the privacy interests of individuals who may be impacted by a decision to allow inspection; the agency's interest in keeping confidential information confidential; the agency's interest in pursuing ongoing investigations without compromising them; the public purpose to be served in allowing inspection; and any other pertinent consideration *relevant to the circumstances of the particular request*." *Freedom Colorado Information, Inc. v. El Paso County Sheriff's Dept.*, 196 P.3d 892, 899 (Colo. 2008), *citing Harris v. Denver Post,* 123 P.3d 1166, 1174 (Colo. 2005)(emphasis added). Pertinent considerations in this case would include privacy interests of the officer(s) under investigation and witnesses, the fact that the investigation is not ongoing, and the Plaintiff's interest in learning who her alleged assailant was and what the results of the IAB investigation into her complaint were.

Under the CCJRA, the district court's role in reviewing the decision of a custodian to deny a request to inspect criminal justice records "primarily consists of holding the custodian accountable for performing his or her role." *Id.* at 899. "[T]he district court should not redo the custodian's balancing of the interests." *Id.* at 900. Ordinarily, the district court's review of a custodian's decision requires the court to do three things: 1) to review the records at issue; 2) to take into account the custodian's balancing of the pertinent interests; and 3) to determine whether the custodian's decision was properly made. However, "[i]f the custodian has failed to engage in the required balancing of the interests or has not articulated his or her rationale, then the

3

trial court should remand the case to the custodian to do so in order to enable judicial review." *Id.*

The Court concludes that the Department of Safety's blanket policy of denying every request for inspection of any records contained in an IAB file until final conclusion of all aspects of the administrative process relating to the investigation required Defendant to abuse the discretion conferred upon custodians by the CCJRA. The law clearly requires the custodian to exercise her judgment, based upon a balancing of the competing interests implicated by each particular inspection request. No such exercise of discretion occurred in this case.  Because of the blanket policy, no such exercise of discretion ever happens when a CCJRA request for inspection is made in Denver for records contained in an IAB file, even after the IAB investigation is concluded and its results are reported to the proper authorities, unless the matter has been administratively closed.

Defendant argued, in defense of the blanket non-disclosure policy, that refusing to release any information concerning an IAB investigation until everything arising out of it is completely concluded serves the public interest because it is better for the public to have complete information than incomplete information. That is no doubt true as a general proposition, all other things being equal.  It does not follow, however, that it is better for the public to have no information than to have incomplete information about an investigation into an alleged assault by a law enforcement officer, sometimes for many months or even years.

**ORDER**

In light of the foregoing, this matter is remanded to Defendant, who is ordered to conduct a thorough review of the subject records and to exercise her sound discretion on a document by document basis, based upon weighing and balancing the pertinent factors, as set forth above.  Defendant shall complete her review and communicate her decision to Plaintiff within fourteen days of the date of this Order.

**ATTORNEY FEES**

Section 24-72-305, C.R.S. provides for the custodian to pay the applicant's court costs and attorney fees "upon a finding that the denial was arbitrary or capricious."  The Court finds that denial of Plaintiff's request for inspection in compliance with the blanket policy described above constituted the arbitrary and capricious denial of Plaintiffs' rights under the CCJRA.  The case law that makes it clear that there is no legal justification for this denial is not new; it is several years old and well-known. Accordingly, Plaintiff is awarded the reasonable court costs and attorney fees incurred in enforcing her right to have her CCJRA records request properly considered under clearly applicable legal standards.  Plaintiff

may have fourteen days from the date of this Order to file her bill of costs and attorney fees affidavit.

ENTERED this 30th day of April, 2015.

BY THE COURT:

*Catherine J. Lemon*

CATHERINE A. LEMON
District Court Judge