IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02123-REB-KMT

OYZHANA WILLIAMS,

    Plaintiff,

v.

MICHAEL HAWKINS, Aurora Police Sergeant, in his individual capacity;
JORDAN ODNEAL, Aurora Police Officer, in his individual capacity;
JOSE ORTIZ, Aurora Police Officer, in his individual capacity,

    Defendants.

## RESPONSE TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER

Plaintiff, by and through counsel, Adam Frank and Faisal Salahuddin of FRANK & SALAHUDDIN LLC, submits the following Response to Defendant's Motion for Protective Order [Doc. 51], and states as follows in support:

### INTRODUCTION

This Court should deny Defendants' Motion for Protective Order [Doc. 51] and enter an order stating that "No witness shall carry a firearm during depositions in this matter." This is a safety issue in a police brutality case where Plaintiff has alleged, with compelling video evidence, that these Defendants were involved in brutally assaulting her and then fabricating felony allegations against her in order to silence and prevent her from vindicating her civil rights. *See* [Doc. 1]. The result sought by Plaintiff is a commonsense result that will prohibit intimidation and harassment during the deposition process, while maintaining the safety and well-being of all individuals present during

1

depositions, including the parties, their counsel-of-record, and the court reporter. Furthermore, in similar circumstances where Aurora Police Officers are accused of misconduct, even the Aurora Police Department (APD) prohibits its officers from being armed during interviews with Internal Affairs Investigators, the Investigative Review Process (IRP), or during pre-disciplinary/disciplinary hearings with the Chief of Police or designee. *See* Aurora Police Department Directive 10.2.16 attached hereto as Exhibit A.[1]

If the Aurora Police Department Chief and his investigators prohibit firearms when police officers involved in accusations of misconduct are merely interviewed, then under the circumstances of this case, this Court should enter a similar order prohibiting witnesses from being armed during depositions.

In the context of this police brutality case, Defendants have not met their burden of demonstrating good cause for the protection they seek.

## LEGAL STANDARD

The decision to issue a protective order rests within the sound discretion of the trial court. *Wang v. Hsu,* 919 F.2d 130, 130 (10th Cir. 1990). Such protection is warranted, upon a showing of good cause, to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." The party seeking a protective order has the burden of demonstrating good cause. *See, e.g.*, *Semsroth v. City of Wichita,* 239 F.R.D. 630, 633 (D. Kan. 2006). "A party moving for a protective order must make a 'particular and specific demonstration of fact' in support of

---

[1] Aurora Police Department Directive 10.2.16 titled "Wearing of Weapons" provides that "Involved members and their observer/representative will not be armed during interviews with Internal Affairs Investigators, the IRP process, or during pre-disciplinary/disciplinary hearings with the Chief of Police or designee."

its request." *Aikens v. Deluxe Financial Services, Inc.,* 217 F.R.D. 533, 536-37 (D. Kan. 2003) (internal citation omitted).

## ARGUMENT

### I. Well-reasoned decisions from this District and elsewhere support Plaintiff's position.

Courts within this judicial district have previously held that Aurora Police Department officers are prohibited from having their weapons on their person during their deposition. *See, e.g. Madrigal et al. v. Carroll et al*, Civil Action No. 12-cv-01918-PAB-MJW (D. Colo. July 8, 2013) (Watanabe, J., ordering that "Plaintiff's Oral Motion to Not Allow the Defendant [Aurora] Police Officers from having their weapons [guns] on their persons during their or any other witness or party's deposition is granted."); see also *Olson et al., v. City of Aurora, et al.,* Case No: 1:14-cv-01362-RPM (D. Colo. June 15, 2016) (Match, J., ordering that the "depositions of City of Aurora police officers and command staff in this may proceed at the office of plaintiffs' counsel and deponents will secure their weapons with a trigger lock device while in attendance."). Thus, Aurora Police Department's directive that its police officers cannot surrender their weapons upon the demands of any <u>party</u> when appearing for job-related depositions at private law offices is not violated when the court enters an order prohibiting firearms during depositions at Plaintiff's counsel's office.

Plaintiff also calls this Court's attention to the fact that a number of other courts in this District have also recently held that firearms have no place in a deposition. On May 5, 2016, the Court issued an order in *Gabani v. City and County of Denver Colorado, et. al.*, Case No: 1:15-cv-00033-RPM (D. Colo. May 5, 2016) holding that "the deposition may proceed at the office of plaintiff's counsel and defendant Miller will secure his

3

weapon with a trigger lock device while in attendance." *See also Smith v. Town of Kremmling, Colorado et al.*, Civil Action No. 1:15-cv-00459-RPM (D. Colo. July 22, 2015) (explaining that "[n]o witness shall carry a firearm during depositions in this matter").

Similarly, on August 3, 2015, United States Magistrate Judge Kristen L. Mix issued an order in *Dau v. City and County of Denver, et al.*, Case No. 1:15-cv-00684-KLM-NYW (D. Colo. August 3, 2015) stating that "Plaintiff may choose to either have the deposition held at the federal courthouse or at Plaintiff's counsel's office with the firearms in a lock box during the deposition." *See also Hulse et al. v. Adams County, Colorado et al.*, Civil Action No. 1:14-cv-02531-RM-NYW (D. Colo. July 14, 2015) (holding that the "depositions of the Individual Defendants will proceed at the Law Firm as noticed, and that all participants, including the Individual Defendants, will place any and all weapons in a secure lock box that will be maintained in the conference room in which the deposition occurs"). It is important to note that these orders were issued notwithstanding the fact that Colo. Rev. Stat. § 16-2.5-101(2) authorizes police officers to carry their service weapon at all times.

Additionally, because the Aurora Police Department Directives also contain a provision <u>prohibiting</u> police officers from carrying firearms with them during police investigations into allegations of misconduct, it appears that even Aurora Police Department recognize the safety issues that come with direct questioning of a police officer about misconduct. Aurora Police Department Directive 10.2.16.

Based on the competing policies of the Aurora Police Department (where one policy prohibits an officer from disarming upon the demand of a party and another policy

4

prohibits an officer from being armed when questioned by another police officer about misconduct), it appears that Defendants' real objection is that they do not want to be told by a party that they cannot carry a gun. Directive 10.2.16 is compelling evidence that not even the police feel safe asking pointed, direct questions about police misconduct to someone who is armed.

This Court should deny Defendants' motion and enter a commonsense order prohibiting any witness from being armed in the deposition room. Such an order would not violate the Aurora Police Department Directive since this Court's Order would not be a demand by a party. Additionally, entering such an order would be consistent with Aurora Police Department Directive 10.2.16.

### II.     Plaintiff's safety concerns are substantial and well-founded

Because depositions are adversarial in nature and can become very heated, it is reasonable to prohibit firearms from being immediately accessible in the room where depositions are conducted. This is particularly true in cases like the instant one, where the law enforcement Defendants have been credibly accused of brutalizing Plaintiff.

To be clear: The purpose of Plaintiff's position at issue is *not* to instigate a "lawyers' spat," "power play," or the like. Nor is Plaintiff's counsel singling out law enforcement defendants for the no-weapons-in-depositions policy—it applies to everyone. That is because the notion of deposing armed individuals elicits genuinely-held safety concerns among the staff and attorneys at the law firm of Plaintiff's counsel. This has the effect of compromising Plaintiff's ability to prosecute his case through vigorous examination of deponents. Individuals who carry firearms in depositions are also intimidating to court reporters and other support staff in the room.

This position is further supported by evidence that law enforcement officers have unlawfully used their loaded, deadly weapons to injure, and often kill, attorneys during adversarial litigation proceedings. For example:

a. On July 29, 1921, Police Sergeant Harry Kellogg shot at Attorney Lemuel Hackley in the courtroom of Judge C. A McDonald, fatally wounding Mr. Hackley. The judge narrowly missed being hit. *Frenzied Policeman Shoots Lawyer Then Turns Gun on Self*, THE DESERF NEWS, July 29, 1921.

b. On November 2, 1955, policeman Herman Baker shot and critically wounded his wife in Brooklyn Family Court. Baker and his wife had been attending a hearing related to their ongoing domestic disputes. *Officer Shoots Wife in Court*, THE PITTSBURGH PRESS, Nov. 2, 1955, at 2.

c. On April 24, 1957, a highly-decorated New York City police officer shot and killed attorney Jacob Smith in his office. Officer James Leggett and his wife were at the offices of Watson, Carter & Smith discussing child custody and alimony matters. When the talks broke down and the parties began to leave, Officer Leggett drew and fired his revolver. *Police Officer Kills Lawyer, Wounds Wife: Man Cited 6 Times For Service Fires*, TOLEDO BLADE, Apr. 25, 1957.

d. On October 16, 1959, a Boston policeman who had won the department's Medal of Honor for foiling a bank robbery shot his wife, his wife's lawyer, and himself in the Suffolk County Courthouse. The

judge had ordered Patrolman George W. Allen to pay his wife 50 dollars per week in support. *Angry Over Support Money: Policeman Shoots Wife, Her lawyer, Kills Self*, ST. PETERSBURG TIMES, Oct. 17, 1959, 4-A.

e. On October 21, 1983, a former Chicago police officer, Hutchie Moore, shot and killed his ex-wife's lawyer and a Cook County judge during a property hearing. *Ex-Cop Shoots, Kills Judge, Attorney In Divorce Court*, DAYTONA BEACH MORNING JOURNAL, Oct. 22, 1983, 2A.

f. On December 22, 1984, a former police officer convicted of murdering his wife shot himself through the heart with a revolver minutes after hearing the verdict. He was waiting in the law library just outside of the courtroom when he committed suicide. *Ex-Officer Kills Self After Conviction*, THE LEDGER, Dec. 24, 1984.

g. On January 14, 1985, Aurora Police Officer Gerald Lee Utesch shot and seriously wounded Jeanne Elliott, his wife's divorce lawyer, in an Arapahoe County courtroom. The judge had just granted his wife's request for a divorce when Mr. Utesch fired the .38-caliber pistol that he carried when off duty. The off duty officer shot Ms. Elliott in the chest, abdomen, face, and leg. The shooting ultimately left Ms. Elliott paralyzed. *Attorney Shot In Divorce Case*, OCALA STAR BANNER, Jan. 15, 1986, 2A.

h. On March 12, 1993, Federal Probation Officer Max Almonor shot and killed his ex-wife and wounded two bystanders with his service revolver in Brooklyn

7

Family Court. The shooting occurred while they were waiting for a hearing over child custody and child support to begin. Mr. Almonor used his badge to get the gun past the metal detectors. Samuel Maull, *Parole Officer Kills Wife in N.Y. Court Waiting Room*, RECORD-JOURNAL, March 13, 1993, 6.

i. On September 16, 1994, Sheriff's Deputy Paul Broussard shot and killed his wife outside the Louisiana courthouse where their divorce was to be finalized. After two hours of failed efforts to get him to surrender, Broussard then shot and killed himself. *Man Kills Wife, Then Shoots Self After a Standoff*, THE REGISTER-GUARD, Sept. 16, 1994.

j. On June 15, 2005, a former Connecticut state trooper shot and killed his ex-wife, wounded her divorce lawyer, and then critically shot himself outside a courthouse. Trooper Michael Bochicchio, Jr. and his wife were at the courthouse for a divorce hearing. *Trooper Kills Ex-Wife, Shoots Self Near Court*, FOX NEWS, June 15, 2005.

k. On August 27, 2009, a police officer in Jericho, Arkansas, shot the town's Fire Chief, Don Payne, during a traffic ticket hearing. Fire Chief Payne, and reportedly seven police officers got into a scuffle, and one of the officers fired his gun. Doctors in Memphis removed a .40-caliber bullet from Payne's hip bone. *Don Payne, Jericho Fire Chief, Shot By Cop In Arkansas Court Over Tickets*, THE HUFFINGTON POST, Nov. 19, 2012.

The Court should minimize the chances that this unfortunate history will repeat itself in any deposition here by prohibiting all deponents from carrying firearms. Indeed, as mentioned earlier, a number of courts in this District have agreed with this position.

## CONCLUSION

Plaintiff respectfully request that the Court deny Defendants' Motion for Protective Order and enter an order stating that "No witness shall carry a firearm during depositions in this matter."

DATED this 13th day of March, 2018

> *s/ Faisal Salahuddin*
> Faisal Salahuddin
> Adam Frank
> FRANK & SALAHUDDIN LLC
> 1741 High Street
> Denver, CO 80218
> Telephone: (303) 974-1084
> Fax: (303) 974-1085
> fas@fas-law.com
> adam@fas-law.com
> *Attorneys for Plaintiff*

9

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system. I further certify that a copy of the foregoing was served via electronic mail through the CM/ECF system, addressed to the following:

Jonathan Abramson
jonathan@kandf.com

Mike Lowe
mlowe@brunolawyers.com

Jordan Lubeck
jordan@kandf.com

*s/Faisal Salahuddin*
FRANK & SALAHUDDIN LLC